Daniel M. Hattis (WSBA #50428)
Paul Karl Lukacs (WSBA #56093)
Che Corrington (WSBA #54241)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com
Email: che@hattislaw.com

Stephen DeNittis, Esq. (Pro Hac Vice application to be submitted)
Shane T. Prince, Esq. (Pro Hac Vice application to be submitted)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL F. LEBAK, for Himself, as a Private Attorney General, and/or On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RING LLC, <br><br> Defendant. | Case No. 2:20-cv-00603 <br><br> CLASS ACTION <br><br> ORIGINAL COMPLAINT FOR: <br> (1) VIOLATION OF CAL. CIVIL CODE § 1750 <br> (2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 <br> (3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 <br><br> JURY TRIAL DEMANDED |

Plaintiff Daniel F. Lebak, individually, as a private attorney general, and/or on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendant Ring LLC ("Ring" or "Defendant"):

CLASS ACTION COMPLAINT

- 1 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## INTRODUCTION AND SUMMARY

1.      This is a class action, brought under California law, on behalf of all United States citizens who, within the applicable limitations period, purchased certain "Ring" brand video doorbell and security camera products at brick and mortar stores located in the United States, which products failed to indicate on the outside of the sealed packaging that the video recording, playback, and snapshot features of these cameras would only operate if the consumer paid an additional fee of $3 per month (or $30 per year) per device for a subscription referred to by Defendant as the "Ring Basic Protect Plan" (hereinafter the "Protect Plan"), and who signed up for the Protect Plan.

2.      Ring video doorbells and security cameras have become ubiquitous in the past several years, with these products being promoted as a low-cost and efficient way of enhancing home security through monitoring one's front door and deterring potential intruders, "package thieves," vandals, and burglars.

3.      A key feature of any such deterrent effect is the fact that the Ring video doorbells and security cameras not only show a "live feed" of the area in front of the camera in real time, but they also record that video footage and take still image snapshots which are stored and can be viewed and played back by the homeowner at a later time. These video recording and image snapshot features include the ability to transfer and save the videos and snapshots onto another device, and to transmit them to the police or to whomever the homeowner wishes to share the video or snapshot with.

4.      Without the ability to record video, take snapshots, or view, store and play back such video and still images, Ring video doorbells and security cameras are nothing more than an expensive electronic alternative to looking out one's window or a "peephole" to see who is currently standing at one's front door.

5.      These video recording, playback and snapshot features of the Ring video doorbells and security cameras are only accessible by the consumer, however, if the consumer also buys an additional, undisclosed Protect Plan service from Ring, which requires payment of an additional monthly fee of $3 (or yearly fee of $30) per device.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

6.      A homeowner who does not purchase Defendant's Protect Plan recording service for $3 per device per month (or $30 per device per year) can *only* see a "live feed" of whoever or whatever is standing in front of the camera at that particular moment. Such a homeowner cannot record or playback video or transfer or save any such images, and cannot view any moving or still images of the area before or after the current moment.

7.      This lawsuit does not contend that there is any defect with the Ring video doorbell products or security cameras themselves, or that it is inappropriate *per se* to require a purchaser of a Ring video doorbell or security camera to purchase an additional subscription service in order to enable the camera to record video and play back moving or still images.

8.      Rather, the central claim in this case is that, if Ring is going to require a consumer who buys a Ring video doorbell or security camera to purchase the Protect Plan service for an *additional* fee per device of $3 per month or $30 per year in order to enable the video recording, playback and snapshot features to function—which features are essential to the product's utility, and are a key reason why a consumer would purchase the product—then the existence of that additional monthly or yearly fee is a material fact that must be stated clearly to a potential purchaser on the outside of the sealed box so the consumer can make an informed decision at the time of purchase. Ring's conduct and its material omissions on the Ring video doorbell and security camera boxes that the video recording and snapshot features are in fact only functional upon paying an additional monthly fee of $3 or yearly fee of $30, are deceptive and misleading in violation of California law.

9.      Ring's conduct and its omissions of material facts on its package advertising have enabled Ring to entice customers to purchase its video security products by misrepresenting the cost customers must pay for Ring products with functioning video recording, playback and snapshot features, both in absolute dollar costs and relative to the price of competing security camera products from other manufacturers which—unlike Ring—*include* free cloud recording, playback and snapshot features *without* requiring the payment of additional monthly or yearly fees.

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

10.     Plaintiff Daniel F. Lebak brings this action individually on his own behalf as a deceived Ring LLC customer and as a private attorney general seeking an order for public injunctive relief to protect the general public, directing that the outside product packaging for Ring video doorbells and security cameras include prominent disclosures that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional fee of $3 per month or $30 per year per device. Plaintiff also brings this action as a representative plaintiff on behalf of a class and subclass of United States consumers who purchased Ring products whose outside boxes did not include such disclosures, seeking, among other things to recover damages and/or that Defendant be ordered to disgorge all revenues Defendant has unjustly received from the members of the classes. Plaintiff also seeks an order requiring Defendant to offer Plaintiff and class members the ability to use the video recording, playback and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

11.     Plaintiff brings these claims under California statutory authority and principles of equity including the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition Law, California Business & Professions Code § 17200 *et seq*.

## THE PARTIES

12.     Plaintiff Daniel F. Lebak is a citizen of the United States of America and of the state of New Jersey and is an individual and a natural adult person who resides in Burlington County, New Jersey.

13.     Like all members of the proposed class, Plaintiff Lebak is a United States citizen who purchased a Ring video camera product at a brick and mortar store located in the United States, which product failed to indicate on the outside of the sealed box that the video recording, playback and snapshot features of the camera would only operate if the purchaser also purchased an additional Protect Plan "subscription" from Ring for a fee of $3 per month or $30 per year, per device, to be paid in perpetuity. Specifically, Plaintiff Lebak purchased a

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

"Ring Video Doorbell 2" for $152.99 (advertised as on sale from $199.99) at a Best Buy store located in Mt. Laurel, New Jersey on December 15, 2018, which did not contain any language on the outside of the sealed box, or in any other form visible at the time of purchase, indicating that the video recording, playback or snapshot features of the camera could only be accessed if Plaintiff also purchased an additional Protect Plan subscription from Ring for a fee of $3 per month or $30 per year, per device, in perpetuity.

14.     Defendant Ring LLC is a limited liability corporation with its principal place of business and/or nerve center located at 523 26th Street, Santa Monica, California 90404. Based on the investigation of Plaintiff's counsel, Ring LLC is a wholly-owned subsidiary of Amazon.com, Inc. Based on the investigation of Plaintiff's counsel, Ring LLC is a citizen of the State of Washington because it is a limited liability company whose member, Amazon.com, Inc., is a citizen of the State of Washington. Ring LLC manufactures, distributes, markets and sells the Ring doorbell and security cameras purchased by the classes, and designs the packaging and implements the policies at issue herein, from its headquarters in California.

## JURISDICTION AND VENUE

15.     **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)—*i.e.*, Class Action Fairness Act jurisdiction —because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

16.     **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because: (1) Defendant is a citizen of the State of Washington, as it is a limited liability company whose member, Amazon.com, Inc. is a citizen of the State of Washington; (2) Defendant is authorized to do business and regularly conducts business in the State of Washington (and/or in the Western District of Washington) such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice; and/or (3) Defendant has committed tortious acts within the State of Washington (as alleged, without limitation, throughout this Complaint).

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

17.     **Venue**. Venue is proper in the Western District of Washington because, pursuant to 28 U.S.C. § 1391(b), this civil action may be brought in a judicial district where Ring LLC resides, and pursuant to 28 U.S.C. § 1391(c)(2), for venue purposes Ring LLC shall be deemed to reside in this judicial district because Ring LLC is subject to the court's personal jurisdiction with respect to this civil action.

18.     **Choice of Law.** California law applies to the claims of Plaintiff and all class members because each of them signed up for Ring's Protect Plan, and in doing so agreed to Ring's Terms of Service which expressly provide for the application of California law and which are "governed by and construed in accordance with the laws of the State of California."

## FACTUAL ALLEGATIONS

19.     Ring holds itself out to the public as a leader in home security which manufactures home security products that incorporate indoor and outdoor motion-detecting cameras, including Ring video doorbells and security cameras.

20.     The Ring video doorbell is the company's flagship product. The first version of the Ring video doorbell (hereinafter, the "Ring Video Doorbell 1") was introduced in 2013. The Ring video doorbell products are marketed as a smart doorbell that contains a high-definition video camera, a motion sensor, and a microphone and speaker for two-way communication.

21.     The Ring video doorbell integrates with an associated smartphone "app," which allows users to view real-time and recorded video from the camera, receive notifications when the doorbell is rung, communicate with visitors at the door, and share the recorded video and snapshots with friends and family.

22.     In 2015, Ring came out with its first video security camera, called the "Ring Indoor Cam Plug-In Security Camera," which is a camera with "live-feed" viewability and video recording and playback features. The Ring Indoor Cam Plug-In Security Camera was updated in 2018 with motion detection and two-way audio.

23.     In 2017, a second-generation video doorbell, the Ring Video Doorbell 2, was released with updated hardware and improved low-light performance.

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

24.     Ring widely markets these products as having the capability of operating as a surveillance camera that can automatically trigger recordings when rung, or when its motion sensors are activated.[1]

25.     Ring hosts and strongly promotes an app known as "Neighbors," which permits online social sharing of captured video footage among users in an effort to capture video of criminals and increase homeowner safety.

26.     Ring also promotes and advertises how its products enhance homeowner security by providing video footage from its cameras and data from its Neighbors app to law enforcement agencies upon request.[2]

27.     Specifically, Ring promotes that it has partnerships with local police departments in some cities to incorporate the Neighbors app into their crime monitoring processes. Ring has credited the service with having helped to solve crimes, and noted that activity on the service surged in California regions affected by wildfires in November 2018.[3]

28.     Without the video recording, playback and snapshot features on the Ring products, the Neighbors app and its usefulness in improving homeowner security would be rendered useless.

29.     Without the ability to record video and capture still images, or to playback, store and view such video and still images, Ring video doorbells and security cameras are nothing more than expensive electronic alternatives to looking out a window or "peephole" to see who is currently standing in front of the camera.

---

[1] *See* Paresh, Dave, "Ring modernized the doorbell, then its inventor, Jamie Siminoff, went to war against crime," Los Angeles Times, May 12, 2017, *available at* https://www.latimes.com/business/technology/la-fi-tn-ring-jamie-siminoff-20170412-htmlstory.html.

[2] *See* Schlosser, Kurt, "In first move since Amazon acquisition, Ring launches Neighbors app to help users fight crime," GeekWire, May 8, 2018, *available at* https://www.geekwire.com/2018/first-move-since-amazon-acquisition-ring-launches-neighbors-app-help-users-fight-crime/.

[3] *See* Rubin, Ben Fox, "How Ring's Neighbors app is making home security a social thing," CNET, December 3, 2018, *available at* https://www.cnet.com/news/how-rings-neighbors-app-is-making-home-security-a-social-thing/.

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

30.     The video recording, playback and snapshot features are fundamental features of the Ring video doorbells and security cameras. Indeed, the Ring devices lose much of their usefulness and effectiveness without the video recording, playback and snapshot features because, unless a user spends literally all of that user's time looking in real time at the "live feeds" on the Ring device for a possible trespasser, that trespasser is gone before the user can process the notification and pull up the live feed on the device to "catch" the trespasser or would-be criminal.

31.     These video recording, playback and snapshot features of the Ring video doorbell and security camera are only accessible to the consumer, however, if the consumer also buys an additional Protect Plan "subscription" service from Ring and pays a monthly fee of $3, or a yearly fee of $30, per device in perpetuity.

32.     The first Ring video doorbell product offered to the public was the Ring Video Doorbell 1, introduced in 2013. The Ring Video Doorbell 1 is still offered today and currently sells for a price at or around $99.99.

33.     The Ring Video Doorbell 1 (which is not the subject of this lawsuit) was and is sold in brick and mortar stores in a sealed box whose outside packaging clearly states that the video recording, playback and snapshot functions of the product will not function unless the consumer also purchases the Protect Plan subscription service and pays a monthly fee of $3 to Defendant.

34.     Specifically, the outside back of the sealed box of the Ring Video Doorbell 1 states:

"**Optional Video Recording**
Protect Plans start at only $3/month."

35.     The box for the Ring Video Doorbell 1 also clearly states:

"**Snapshot Capture**
View and save photos with
optional Ring Protect…"

36.     Such language on the box of the Ring Video Doorbell 1 clearly advises consumers of the fact that both the "Video Recording" and "Snapshot Capture" features of the

---

CLASS ACTION COMPLAINT

- 8 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Ring Video Doorbell 1 are **"optional"** and that to activate these features the customer must make an additional purchase of a "Protect Plan" from Ring for $3 per month.

37.     As such, Ring Video Doorbell 1 purchases are not included in any of the proposed class definitions, nor are they the subject of this case.

38.     The fact that such notice and disclosure was expressly placed by Defendant on the outside of the sealed box of the Ring Video Doorbell 1—a product which is still being sold today—shows that Defendant considered this information to be material to consumers and/or is aware of its materiality.

39.     Unfortunately, the packaging for many *other* Ring products fails to disclose the $3 monthly or $30 yearly fee, per device, required to use the necessary features of video recording, playback and snapshots, including: the Ring Video Doorbell 2, the Ring Video Doorbell Pro Camera, the Ring Indoor Cam Plug-In Security Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up Indoor/Outdoor Wire-Free Camera, the Ring Spotlight Cam, and the Ring Floodlight Cam.

40.     Plaintiff Lebak's experience highlights this problem.

41.     In December 2018, Mr. Lebak noticed that his Ring Video Doorbell 1, which he had previously purchased approximately three years earlier, was starting to wear out. Mr. Lebak desired to replace his Ring Video Doorbell 1, and was also considering purchasing a second security camera or video doorbell for monitoring his backyard.

42.     Mr. Lebak desired such video doorbell or security camera products to help provide security to his home. The security features of video recording, playback and snapshots were important to him and were a primary reason he desired to purchase such products.

43.     Specifically, Mr. Lebak had learned from experience that his Ring Video Doorbell 1 was virtually useless without the video recording, playback and snapshot functions, as he could never act quickly enough to retrieve his phone, pull up the Ring smartphone app, and open the live feed when he received a notification that a person or thing was detected via the motion sensor on the device.  This problem was exacerbated by the fact that the live feed on his Ring Video Doorbell 1 was not truly "live"—rather, there was a delay of at least 2-3

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

seconds between what was happening in front of the camera and what he was seeing on his smartphone.

44.     On or about December 15, 2018, Mr. Lebak went to the Best Buy store located in Mount Laurel, New Jersey, to look at possible purchase options for video doorbells or security cameras.

45.     While at the Best Buy store, and prior to making any purchase, Mr. Lebak compared the packaging for the Ring Video Doorbell 1, which was offered for sale at a price of $99.99, and the Ring Video Doorbell 2, which was offered for sale at a price of $152.99 (on "sale" from a stated regular price of $199.99). He observed that, while both products advertised their video and camera features, only the box for the much cheaper Ring Video Doorbell 1 stated that he would need to purchase the "optional" Ring Protect at $3/month to access the video recording and snapshot capture features.

46.     Mr. Lebak carefully inspected the box for the more expensive Ring Video Doorbell 2 and confirmed that it did not indicate anywhere that he would be required to pay a monthly fee of $3 (or a yearly fee of $30) to access the video recording, playback and snapshot features, which he deemed necessary to the product's utility.

47.     Based on the representations and omissions on the boxes, and on the much higher price of the Ring Video Doorbell 2, Mr. Lebak reasonably believed that the video recording, playback and snapshot features were *included*—without requiring a monthly subscription at an additional cost—in the higher $199.99 list price of the Ring Video Doorbell 2 (which Best Buy was offering on "sale" for $152.99).

48.     Mr. Lebak was never made aware, and did not believe, that he would have to purchase a Ring Protect Plan and pay $3 per month or $30 per year in order to utilize the advertised video recording, playback, and snapshot features of the Ring Video Doorbell 2, based on the representations made by Defendant on the outside of that product's sealed box, and based on his comparison of the advertising and information on the box of the Ring Video Doorbell 2 versus the box of the cheaper Ring Video Doorbell 1..

49.     In contrast, Mr. Lebak understood that with regard to the much lower-priced

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Ring Video Doorbell 1 (whose list price of $99.99 was $100 cheaper than the $199.99 list price for the Ring Video Doorbell 2), Mr. Lebak would need to pay an additional $3 per month (or $30 per year) to utilize the video recording, playback and snapshot features.

50.     Relying on Defendant's representations and omissions of material facts, Mr. Lebak purchased one Ring Video Doorbell 1 for $99.99 and one Ring Video Doorbell 2 for $152.99 (discounted from Best Buy's regular $199.99 price).  Mr. Lebak determined that he could simply transfer the Ring Protect Plan used for his old Ring Video Doorbell 1, for which he was paying $30 per year, to his new Ring Video Doorbell 1, and thereby incur no additional monthly or yearly expense.

51.     Mr. Lebak took both products home and promptly installed the Ring Video Doorbell 2 on his front door, and the Ring Video Doorbell 1 on his back door.

52.     Mr. Lebak then reviewed the pamphlet on the inside of the box of the Ring Video Doorbell 2, which instructed him that he needed to register the product on the Ring smartphone app in order to use it.

53.     Upon registering the Ring Video Doorbell 2 on the Ring app, Mr. Lebak was notified for the *first time* that in order to enable the video recording, playback and snapshot features for his new Ring Video Doorbell 2, he would need enroll in the Protect Plan service and pay $3 per month (or $30 per year) for that device in perpetuity to access those necessary features for that device.

54.     After learning that he was required to pay a $3 monthly fee (or a $30 annual fee) for the Ring Video Doorbell 2, Mr. Lebak went back and double-checked the language on the outside of the product's box.

55.     Upon careful inspection, he confirmed that **_nowhere_** on the box for the Ring Video Doorbell 2 was it disclosed that he would be required to purchase the Protect Plan service for an additional fee of $3 per month or $30 per year to access the vital features of video recording, playback and snapshots.

56.     This misrepresentation and omission of material facts was even more misleading due to the fact that the other product purchased by Mr. Lebak on December 15, 2018—the

---

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

much cheaper Ring Video Doorbell 1—clearly stated on the outside of the box that he would be required to subscribe to the Ring Protect plan and pay a $3 monthly fee to use the video recording, playback and snapshot features.

57.     Mr. Lebak had been defrauded.

58.     In order to utilize the Ring Video Doorbell 2 for its intended purpose (and for the purpose for which Mr. Lebak purchased the product), Mr. Lebak was forced to sign up for the Protect Plan, and has been paying Defendant $30 per year (he has paid $60 total thus far) to access that product's necessary and crucial video recording, playback and snapshot capabilities.

59.     Upon further investigation, counsel for Mr. Lebak discovered that the packaging for many other Ring products likewise fails to disclose the $3 monthly or $30 yearly fee per device required to use the necessary features of video recording, playback and snapshots, including: the Ring Video Doorbell Pro Camera, the Ring Indoor Cam Plug-In Security Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up Indoor/Outdoor Wire-Free Camera, the Ring Spotlight Cam, and the Ring Floodlight Cam.

60.     Counsel's investigation revealed that the Ring Video Doorbell 1 (which was Ring's very first product) is the only Ring product that discloses on the outside box that a "$3/month" subscription to the Ring Protect service is required to access the recording, playback and snapshot features.

61.     The back of the sealed box of the Ring Video Doorbell 1 states:

> "**Optional Video Recording**
> Protect Plans start at only $3/month."

62.     The box for the Ring Video Doorbell 1 also states:

> "**Snapshot Capture**
> View and save photos with
> optional Ring Protect…"

63.     The disclosures on the Ring Video Doorbell 1 packaging that the video recording, playback and photo snapshot features require an additional $3 monthly fee underscores the materiality of such disclosures.

64.     Clearly, if Ring believed such disclosures were necessary and material to state on the outside box for the Ring Video Doorbell 1 (Ring's very first product), then Ring should

---

CLASS ACTION COMPLAINT

- 12 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   have also placed such disclosures on the packaging for <u>all</u> of its video doorbell and security

2   camera products released thereafter.

3         65.    Ring's misrepresentations and failure to provide such disclosures on all of its

4   products was false and misleading.

5         66.    Due to this deceptive advertising and failure to disclose, Plaintiff Lebak and the

6   thousands of other members of the classes reasonably believed and expected such video

7   recording, playback and snapshot features were included with the products they purchased, for

8   no additional charge.

9         67.    These video recording, playback and snapshot features were important to Mr.

10   Lebak and to the members of the classes, and were a primary reason they purchased the Ring

11   products.

12         68.    The Ring video doorbells and security cameras which lack any notice on their

13   packaging that those critical features require the purchase of a Protect Plan for an additional

14   per-device fee of $3 per month or $30 per year  include the Ring Video Doorbell 2 purchased

15   by Plaintiff, as well the Ring Video Doorbell Pro Camera, the Ring Indoor Cam Plug-In

16   Security Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up

17   Indoor/Outdoor Wire-Free Camera, the Ring Spotlight Cam, and the Ring Floodlight Cam.

18         69.    For all of these products, the first time a consumer is made aware of the fact that

19   the camera will not record video images, play back video images, or take photo snapshots

20   without the purchase of an additional subscription and payment of $3 per month or $30 per

21   year, is <u>after</u> purchasing the product.

22         70.    Upon opening the sealed box, consumers are advised that to use the video

23   doorbell or security camera, consumers must download and install the Ring app and register the

24   device. But only <u>after</u> downloading and installing the Ring app are consumers advised that, in

25   order to utilize the necessary recording, playback, and image capture features of the device,

26   they will have to pay a fee of $3 per month or $30 per year per device.

27         71.    There is no logical or lawful reason why potential purchasers of the "Ring

28   Doorbell 1" should be advised of these material facts <u>before</u> purchase, while purchasers of

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  other later versions of the Ring video doorbells and security cameras should only be so advised

2  <u>after</u> purchase. <u>All</u> Ring video doorbells and security cameras require the purchase of an

3  additional Protect Plan subscription at a cost of $3 per month or $30 per year per device in

4  order to activate their video recording, playback and snapshot functions.

5       72.     This lawsuit does not contend that there is any defect with any version of the

6  Ring video doorbells or security cameras, in and of themselves, or that it is inappropriate *per se*

7  to require a purchaser of a Ring video doorbell or security camera to purchase an additional

8  monthly or yearly Protect Plan subscription service in order to use the video recording,

9  playback and snapshot functions of the device.

10       73.     Rather, the central claim in this case is that, if Defendant Ring is going to

11  require a consumer who buys a Ring video doorbell or security camera to make an additional

12  purchase of the Protect Plan for $3 per month or $30 per year in order to enable the crucial

13  video recording, playback and snapshot features of the cameras—features without which the

14  cameras are of minimal utility—the existence of this required extra ongoing subscription fee is

15  a material fact that must be stated clearly to a potential purchaser on the box at the point of sale

16  (as Ring still does for the original Ring Video Doorbell 1). The advertising and lack of such

17  notice on the boxes of the Ring video doorbells and security cameras purchased by the

18  proposed classes constitute misrepresentations and omissions of material facts that are

19  deceptive and misleading in violation of California law.

20       74.     These misrepresentations and omissions have enabled Ring to entice customers

21  to purchase its video security products by misrepresenting the cost customers must pay for Ring

22  products with functioning video recording, playback and snapshot features, both in absolute

23  dollar costs, and relative to the price of *competing* security camera products from other

24  manufacturers which, unlike Ring, often include *free* video recording (including *free* cloud

25  recording), playback and snapshot features without requiring the payment of additional

26  monthly or yearly fees.

27       75.     For example, Amazon.com, Inc—which is the parent company of Ring LLC—

28  manufactures and offers on its website its own Amazon-branded "Amazon Cloud Cam Indoor

---

Security Camera" for $119.99. The $119.99 selling price for the Amazon Cloud Cam *includes* *free* cloud recording, *free* playback and *free* snapshots for the past 24-hour period.

76.     In contrast, Ring's competing security camera products, which range in price from $59.99 (the Ring Indoor Cam) to $99.99 (the Ring Stick Up Cam) to $199.99 (the Ring Stick Up Cam Elite), include *no* cloud recording, *no* video playback, and *no* snapshot features whatsoever with the selling price. Further, unlike other competing security camera products, Ring's security camera products contain no internal storage and no slot for an SD or microSD flash card to locally store recordings and snapshots, such that the Ring security cameras are useless without a Ring Protect subscription.

77.     Numerous other competing security camera products—unlike Ring's security camera products—*include* some amount of free cloud video recording, free video playback and free photo snapshots at no extra cost above the product's initial purchase price. For example, Wyze Labs, Inc. offers *free* cloud storage of videos and snapshots for a 14-day period for its Wyze Cam security cameras, whose selling prices start at only $25.98 on Amazon.com. For example, Arlo Technologies, Inc. offers *free* cloud storage for a 7-day period for its popular Arlo line of security cameras. For example, Canary Connect, Inc. offers *free* cloud storage for a 24-hour period for its Canary security cameras.

78.     Likewise, many competing video doorbell products—unlike Ring's video doorbell products—*include* some amount of free cloud video recording, free video playback, and free snapshots at no extra cost above the product's initial purchase price. For example, Remo+ offers *free* cloud storage of videos and snapshots for a 3-day period for its Remo video doorbell products, whose selling prices start at $99.99.

79.     And other competing video doorbell products—unlike Ring's video doorbell products—allow consumers to locally store and play back recorded video for no charge without requiring a cloud subscription. For example, Anker Technology Ltd.'s "eufy" video doorbells, whose list prices start at $159.99, contain enough internal memory to store and play back up to 30 days of motion-triggered recorded video for *free*, such that no cloud subscription or

CLASS ACTION COMPLAINT

- 15 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

additional payments are required to utilize the video recording, playback and snapshot features of the devices.

80.     In sum, based on Ring's misrepresentations and omissions of material facts, class members reasonably assumed and understood, just as Plaintiff Daniel Lebak did, that the video recording, playback and snapshot features of the Ring video doorbells and security cameras they purchased were included in the purchase price they paid. A reasonable consumer would not understand or expect that these fundamental security features in fact required an additional subscription of $3 per month or $30 per year, per device, in perpetuity.

81.     Mr. Lebak reasonably relied on Defendant's misrepresentations and omissions of material facts. If Mr. Lebak had known the truth, he would have acted differently and would not have purchased the Ring Video Doorbell 2, or he would have purchased another product instead.

82.     These misrepresentations and omissions by Defendant are material, in that they are the type of representations on which an ordinary prudent person would rely upon in conducting his or her affairs.

83.     As a direct and proximate result of Defendant's acts and omissions, Mr. Lebak was harmed, suffered an injury-in-fact, and lost money or property.

84.     Mr. Lebak has a legal right to rely now, and in the future, on the truthfulness and accuracy of Defendant's representations and indications, including on the outside packaging for Ring video doorbells and security cameras, that the expected video recording, playback and snapshot features are included with the purchase price of those products.

85.     Mr. Lebak would purchase Ring products again if he could have confidence regarding the truth of Defendant's representations of the features included with the purchase price of the products.

86.     Mr. Lebak will be harmed if, in the future, he is left to guess as to whether Ring's representations are accurate and whether there are omissions of material facts regarding the features included in the purchase price of Ring products.

87.     If Mr. Lebak were to purchase a Ring video doorbell or other product again

CLASS ACTION COMPLAINT

- 16 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

from Defendant without Defendant having changed its unlawful and deceptive conduct alleged herein, Mr. Lebak would be harmed on an ongoing basis and/or would be harmed once or more in the future.

## CLASS ACTION ALLEGATIONS

88.    Plaintiff brings this action as a class action on behalf of a class defined as:

> **All United States citizens who, during the applicable limitations period, (a) purchased a Ring video doorbell or security camera at a brick and mortar store in the United States where the outside box did not contain any language indicating that the video recording, playback or snapshot features of the product could only be accessed if the consumer also purchased a Protect Plan subscription for an additional monthly or annual fee, and (b) signed up for the Protect Plan.**

89.    Plaintiff also brings this action as a class action on behalf of a subclass defined as:

> **All United States citizens who, during the applicable limitations period, purchased a "Ring Video Doorbell 2" at a brick and mortar store in the United States and signed up for the Ring Protect Plan.**

90.    Specifically excluded from the class and subclass are Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

91.    ***Numerosity.*** Plaintiff does not know the exact number of class members, but is informed and believe that the classes easily comprise tens of thousands of individuals. As such, class members are so numerous that joinder of all members is impracticable.

92.    No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendant, or of any subject belief of Plaintiff or an individual class member.

93.    ***Commonality and Predominance.*** Well-defined, identical legal or factual questions affect the members of the classes. All claims in this matter arise from the identical written advertising and omissions of material facts on the outside packaging of the products purchased by the relevant class and subclass members, none of which contains any language

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  which would advise the purchaser that the video recording, playback or snapshot features of the

2  camera could only be accessed if the consumer also purchased an additional subscription for a

3  fee of $3 per month or $30 per year. These questions predominate over questions that might

4  affect individual class members. These common questions include, but are not limited to, the

5  following:

6         a.     Whether Ring's failure to state on the product packaging of its video

7  doorbell and security camera products that the video recording, playback and snapshot features

8  could only be accessed if the consumer paid an additional monthly or yearly fee was an

9  omission of material facts in violation of California law;

10         b.     Whether Defendant's decision to include statements on the sealed

11  outside packaging of the Ring Video Doorbell 1 that advised consumers that the video

12  recording, playback and snapshot features of the product could only be accessed if the

13  consumer paid an additional $3/month subscription fee, should be deemed an admission that

14  those facts were material to potential customers;

15         c.     Whether Defendant's misrepresentations and omissions alleged herein

16  constitute fraudulent concealment under California law;

17         d.     Whether Defendant's conduct as outlined herein violated the False

18  Advertising Law, California Business and Professions Code § 17500 *et seq.*;

19         e.     Whether Defendant's conduct as outlined herein violated the Consumers

20  Legal Remedies Act, California Civil Code § 1750 *et seq*;

21         f.     Whether Defendant's conduct as outlined herein violated California's

22  Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*;

23         g.     Whether Plaintiff and the classes have suffered injury and have lost

24  money or property as a result of Defendant's misrepresentations and omissions alleged herein;

25         h.     Whether Defendant should be ordered to disgorge its unjust enrichment;

26         i.     Whether Defendant should be enjoined from further engaging in the

27  misconduct alleged herein; and

28

---

CLASS ACTION COMPLAINT

- 18 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

94.     Whether Plaintiff and the classes are entitled to an order for class-wide injunctive relief, imposing equitable remedies such as restitution and/or requiring Ring to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

95.     The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes which would establish incompatible standards of conduct for the parties opposing the classes.

96.     ***Typicality.***  Plaintiff is a member of the class and subclass he seeks to represent. The claims of Plaintiff are not only typical of all class and subclass members, they are identical.

97.     All claims of Plaintiff and the class and subclass arise from the same misrepresentations and omissions of material fact on the sealed outside of the product packaging for Ring doorbell cameras and security cameras.

98.     All claims of Plaintiff and the class and subclass are based on the exact same legal theories.

99.     ***Adequacy.***  Plaintiff has no interest antagonistic to, or in conflict with the class or subclass. Plaintiff will thoroughly and adequately protect the interests of the class and subclass, having retained qualified and competent legal counsel to represent himself and the class and subclass.

100.     Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

101. By their conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the classes, such that final injunctive relief and/or declaratory relief is appropriate respecting the classes as a whole.

102. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

103. A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member are too small to make individual actions economically feasible.

104. Common questions will predominate, and there will be no unusual manageability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the Consumers Legal Remedies Act**
**California Civil Code § 1750 *et seq*.**

105. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

106. Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the classes.

107. Defendant is a "person," as defined by California Civil Code § 1761(c).

108. Plaintiff and class members are "consumers," as defined by California Civil Code § 1761(d).

109. The Ring video doorbells and security cameras purchased by Plaintiff and the class members are "goods" as defined by California Civil Code § 1761(a).

110. The purchases by Plaintiff and the class members constitute "transactions," as defined by California Civil Code § 1761(e).

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

111.    The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant did not result from a *bona fide* error notwithstanding the use of reasonable procedures adopted to avoid such error.

112.    With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in King County of Washington (the county in which this action has been commenced) pursuant to Section 1780(d) of the California Civil Code because, without limitation, Defendant is doing business in King County and Defendant is a limited liability company whose member Amazon.com, Inc., is headquartered in King County. A declaration establishing that this Court has proper venue for this count is attached hereto as **Exhibit A**.

113.    Defendant's methods, acts and/or practices, including Defendant's misrepresentations, active concealment, and/or failures to disclose, violated and continue to violate the CLRA in ways including, but not limited to, the following:

a.    Defendant misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b.    Defendant advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

c.    Defendant represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

114.    Specifically, Defendant advertised and represented that its products had the ability to record and playback video and capture snapshots, but in reality these material features were available only upon the purchaser's payment of an additional $3 per month or $30 per year per device to Defendant.

115.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the classes; (b) Defendant concealed material information from Plaintiff and the classes; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

116.     Defendant's misrepresentations and nondisclosures deceive and have a tendency and ability to deceive the general public.

117.     Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Indeed, the utility and value of Defendant's Ring doorbell and security camera products are significantly reduced, almost to the point of worthlessness, without the ability to record and playback video and capture snapshots.

118.     As a direct and proximate result of Defendant's unfair, unlawful and fraudulent conduct, Plaintiff and the classes suffered injury-in-fact and lost money.

119.     But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiff and the classes made purchases they otherwise would not have made, and paid more than they otherwise would have paid for the products they purchased, and/or are being required to pay out additional monies in the form of a monthly or yearly fee to use the recording, playback and snapshot features they expected were included in the product purchase price.

120.     Defendant's conduct as alleged herein caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff and the classes seek an order enjoining Defendant from committing such practices.

121.     If not enjoined by order of this Court, Defendant is free to resume its unlawful behavior and injure Plaintiff and consumers in the United States through the misconduct alleged herein once more. Defendant has a duty to speak truthfully or in a non-misleading manner.

122.     Plaintiff would purchase Ring products again if he could have confidence regarding the truth of Defendant's representations of the features included with the purchase price of the products.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

123.     Plaintiff will be harmed if, in the future, he is left to guess as to whether Defendant's representations are accurate and whether there are omissions of material facts regarding the features included in the purchase price of Ring products.

124.     If Plaintiff were to purchase a Ring video doorbell or other product again from Defendant without Defendant having changed its unlawful and deceptive conduct alleged herein, Plaintiff would be harmed on an ongoing basis and/or would be harmed once or more in the future.

125.     In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

126.     The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

127.     Plaintiff does not currently seek damages in this Complaint under the CLRA.

128.     In accordance with California Civil Code § 1782(a), on April 10, 2020, Plaintiff's counsel served Defendant with notice of its CLRA violations by USPS certified mail, return receipt requested. True and correct copies of that notice are attached hereto as **Exhibit B**.

129.     If Defendant fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's notification letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

## COUNT II

**Violation of California's False Advertising Law**
**California Business and Professions Code § 17500** *et seq.*

130.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

131.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the putative classes.

132.    Defendant has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

133.    Defendant's conduct as described herein is misleading, and/or has a capacity, likelihood or tendency to deceive reasonable consumers.  *See, e.g.*, *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002)(UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc*., 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (same).

134.    Defendant, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes, disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused to be made or disseminated, before the public in the United States, in newspaper or other publication, or other advertising device, or by public outcry or by proclamation, or in any other manner or means, including over the internet, statements concerning that personal property or those services, and/or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which are untrue or misleading and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading.

135.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

material information that was not known to Plaintiff and the classes; (b) Defendant concealed material information from Plaintiff and the classes; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

136.    Defendant committed such violations of the False Advertising Law with actual knowledge that its advertising was misleading, or Defendant, in the exercise of reasonable care, should have known that its advertising was misleading.

137.    Plaintiff and the classes reasonably relied on Defendant's representations and/or omissions made in violation of the False Advertising Law.

138.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the classes suffered injury-in-fact and lost money.

139.    But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiff and the classes made purchases they otherwise would not have made, and paid more than they otherwise would have paid for the products they purchased, and/or are being required to pay out additional monies in the form of a monthly or yearly fee to use the recording, playback and snapshot features they expected were included in the product purchase price.

140.    Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

141.    Defendant should be ordered to disgorge or make restitution of all monies improperly accepted, received or retained.

142.    Defendant's conduct has caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such violations of the FAL. Plaintiff further seeks an order granting restitution to Plaintiff and the classes in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

143.    Currently, Plaintiff and class members are being required by Defendant to pay a $3 monthly fee or $30 yearly fee, per device, in order to make the video recording, playback and snapshot features of the products at issue function.

144.    Without relief to stop such $3 monthly or $30 yearly charges in the future, such charges will continue in perpetuity, unless class members stop paying the demanded fees, in which case they will lose the video recording, playback and snapshot features of the product.

145.    Plaintiff, on behalf of himself and the classes, seeks injunctive relief to require Defendant to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

146.    Absent injunctive relief, Defendant will continue to injure Plaintiff and the class members. Defendant's demands that class members pay an additional monthly or yearly fee in order to make their devices function properly are ongoing. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

147.    In order to prevent injury to the general public, Plaintiff, in his individual capacity, seeks a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

148.    Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

### COUNT III
### Violation of California's Unfair Competition Law
### California Business and Professions Code § 17200 *et seq.*

149.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

150.    Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of a putative class.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

151.     Defendant's acts and omissions alleged herein constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 et seq. (the "Unfair Competition Law" or "UCL").

152.     Defendant's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the classes. There is no utility to Defendant's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Defendant's conduct alleged herein.

153.     Defendant's conduct and omissions alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750 *et seq.* and Cal. Civ. Code §§ 1709-1710.

154.     By its conduct and omissions alleged herein, Defendant has violated the "unlawful" prong of the UCL, including by making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* and Cal. Civ. Code § 1750, *et seq.*; and engaging in deceit and fraudulent concealment in violation of Cal Civ. Code §§ 1709-1710, *et seq.*

155.     With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the classes; (b) Defendant concealed material information from Plaintiff and the classes; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

156.     Defendant's material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

157.     Defendant's nondisclosures and omissions of material facts deceive and have a tendency to deceive the general public and reasonable consumers, and therefore were unfair and fraudulent.

158.     Defendant's nondisclosures and omissions of material facts are material, such that a reasonable person would attach importance to the information and would be induced to

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

act on the omissions in making purchase decisions.

159. Plaintiff and members of the classes reasonably relied on Defendant's nondisclosures and omissions of material facts, and would have acted differently if they had known the truth.

160. By its conduct and omissions alleged herein, Defendant received more money from Plaintiff and the classes than it should have received, and that money is subject to restitution.

161. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiff and the classes suffered injury-in-fact and lost money.

162. But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiff and the classes made purchases they otherwise would not have made, and paid more than they otherwise would have paid for the products they purchased, and/or are being required to pay out additional monies in the form of a monthly or yearly fee to use the recording, playback and snapshot features they expected were included in the product purchase price.

163. Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

164. Plaintiff, on behalf of himself and the classes, seeks injunctive relief to require Defendant to give Plaintiff and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

165. Defendant's conduct has caused substantial injury to Plaintiff, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices. Plaintiff further seeks an order granting restitution to Plaintiff and the classes in an amount to be proven at trial. Plaintiff further seeks

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

2        166.    Plaintiff and the general public lack an adequate remedy at law to remedy and/or

3    mitigate the totality of the injuries and misconduct described herein.

4        167.    Absent injunctive relief, Defendant will continue to injure Plaintiff and the class

5    members. Defendant's conduct and omissions of material fact are ongoing and Defendant

6    continues to demand payment of an additional monthly or yearly fee in order to enable the

7    promised core features of video recording, playback and snapshots. Moreover, even if such

8    conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

9        168.    Plaintiff, in his individual capacity, seeks public injunctive relief under the UCL

10   to protect the general public from Defendant's deceptive conduct, false advertising, and

11   omissions of material facts. Specifically, in order to prevent injury to the general public,

12   Plaintiff, in his individual capacity, seeks a public injunction requiring Defendant to disclose,

13   on the outside of the boxes of its Ring video doorbell and security camera products, that the

14   video recording, playback and snapshot features of the products will not function unless the

15   purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month

16   or $30 per year.

17                                    **PRAYER FOR RELIEF**

18       169.    In order to prevent injury to the general public, Plaintiff Daniel F. Lebak asks

19   that the Court enter a public injunction requiring Defendant to disclose, on the outside of the

20   boxes of its Ring video doorbell and security camera products, that the video recording,

21   playback and snapshot features of the products will not function unless the purchaser also buys

22   the Protect Plan from Ring for an additional fee of $3 per month or $30 per year, per device.

23       170.    Further, on behalf of himself and the proposed classes, Plaintiff requests that the

24   Court order relief and enter judgment against Defendant as follows:

25           a.     Declare this action to be a proper class action, certifying the class and

26   subclass defined herein, and appoint Plaintiff and his counsel to represent the classes;

27           b.     Order disgorgement or restitution, including, without limitation,

28   disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    or indirectly, from Plaintiff and the members of the classes or otherwise as a result of the

2    unlawful conduct alleged herein;

3               c.      Permanently enjoining Defendant from the unlawful conduct alleged

4    herein;

5               d.      Order Defendant to give Plaintiff and class members the ability to use

6    the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*,

7    without the payment of any additional fee) for the life of those devices;

8               e.      Retain jurisdiction to police Defendant's compliance with the permanent

9    injunctive relief;

10              f.      Order Defendant to pay attorneys' fees, costs, and pre-judgment and

11   post-judgment interest to the extent allowed by law; and

12              g.      Provide all other relief to which Plaintiff and the classes may show

13   themselves justly entitled.

14                              **JURY DEMAND**

15        Plaintiff Daniel F. Lebak, on behalf of himself and on behalf of the classes, demands a

16   trial by jury on all issues so triable.

17        DATED this 22nd day of April, 2020.

18                              Presented by:

19                              HATTIS & LUKACS

20                              By: _____

21                              Daniel M. Hattis (WSBA #50428)
                                Che Corrington (WSBA #54241)
22                              Paul Karl Lukacs (WSBA #56093)
                                HATTIS & LUKACS
23                              400 108th Avenue NE, Suite 500
                                Bellevue, WA 98004
24                              Telephone: (425) 233-8650
                                Facsimile: (425) 412-7171
25                              Email: dan@hattislaw.com
                                Email: pkl@hattislaw.com
26                              Email: che@hattislaw.com

27                              Stephen DeNittis, Esq.*
                                Shane T. Prince, Esq.*
28                              DENITTIS OSEFCHEN PRINCE, P.C.

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

*\*Pro hac vice application to be submitted*

CLASS ACTION COMPLAINT

- 31 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com